10-1856.101-JCD                                             June 25, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

THOMAS J. PROST, JEROME P. CROKE,    )
and ROBERT H. JONES,                 )
                                     )
         Plaintiffs,                 )
                                     )
    v.                               )    No. 10 C 1856
                                     )
BANK OF AMERICA CORPORATION and      )
LINCOLN BENEFIT LIFE COMPANY,        )
                                     )
         Defendants.                 )

## MEMORANDUM OPINION

Plaintiff's motion for remand is before the court. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs Thomas J. Prost, Jerome P. Croke, and Robert H. Jones, all Illinois citizens, bring this action against defendants Bank of America Corporation, a Delaware corporation with a principal place of business in North Carolina, and Lincoln Benefit Life Company, a Nebraska corporation with a principal place of business in Nebraska.

The action arises out of a "Split Dollar Agreement" (alternatively, the "Agreement") that each of the plaintiffs entered into with their former employer, Talman Home Federal Savings and Loan Association of Illinois ("Talman"). Plaintiffs

allege that the Agreement obligated Talman and its successors, including Bank of America Corporation, to maintain, for the remainder of plaintiffs' lives, life insurance policies on them that have a minimum $200,000 permanent death benefit, payable to plaintiffs' beneficiaries.

A brief history of the policies, taken from plaintiffs' complaint, is in order. In 1978, Talman's Board of Directors authorized Talman to contract with certain employees "wherein the employee would be compensated with life insurance with a permanent death benefit of $200,000 payable to the employee's beneficiary upon death of the employee." (Compl. Count I ¶ 10.) The policies issued pursuant to the contracts were known as Retired Lives Reserve policies; they were fully pre-funded by Talman, and Talman was to receive no premium reimbursement upon the employee's death. Approximately twelve employees were insured under the program, including plaintiffs Croke and Prost.

In 1985, Talman's Board directed that the "Retired Lives Reserve" policies be replaced with policies issued pursuant to split dollar agreements, where the policies would pay a permanent death benefit to the employees' beneficiaries and also pay a death benefit to Talman for the reimbursement of premiums it had paid. Plaintiffs entered into the Agreements with Talman that year, and plaintiffs opted for a $200,000 guaranteed death benefit with taxable imputed income. Talman obtained life insurance policies

from Executive Life Insurance Company ("Executive Life"). According to plaintiffs, the $200,000 death benefit pursuant to these policies was permanent and was to remain in effect until the plaintiffs' respective deaths.

In 1989, Talman became aware that Executive Life was having financial difficulties and that it intended to file for bankruptcy relief or otherwise liquidate its assets, so Talman changed insurance carriers. The Executive Life policies were cancelled and replaced with life insurance policies issued by defendant Lincoln Benefit Life Company ("Lincoln"). Each policy had an issue date of November 1, 1990.

In 1992, ABN-AMRO North America, Inc. acquired Talman's assets and assumed its liabilities. Talman became known as LaSalle Talman. In 2007, defendant Bank of America Corporation (the "Bank") acquired LaSalle Talman's assets and assumed its liabilities.

In February 2009, the Bank notified plaintiffs that their life insurance policies would lapse on October 31, 2010. Plaintiff Croke responded, asserting that the Bank could not let the policies lapse because the death benefit was permanent. The Bank replied that it had determined that the controlling instrument was the 1985 Split Dollar Agreement and that the Agreement did not include any specific promise as to the amount of coverage to be provided by the policy or as to the structure of the policy. The Bank's position

is that the Agreement makes clear that it was not an irrevocable promise to provide a permanent policy for the remainder of plaintiffs' lives. (Compl., Ex. E, Letter from Keri M. Erbe to Jerome Croke.)

Plaintiffs originally filed this action in the Circuit Court of Kane County on February 16, 2010. The complaint contains claims for breach of contract against the Bank (Count I); estoppel against the Bank (Count II); and breach of contract against Lincoln (Count III). On March 24, 2010, defendants removed the action to this court, asserting diversity jurisdiction. Plaintiffs now move to remand.

## **DISCUSSION**

Jurisdiction based on diversity exists if the amount in controversy exceeds $75,000 and the suit is between citizens of different states. 28 U.S.C. § 1332(a)(1). There is no dispute that the parties are of diverse citizenship, but the amount in controversy is at issue.

In a case removed from state court, the amount in controversy is the amount required to satisfy a plaintiff's demands in full on the day the suit was removed. Oshana v. Coca-Cola Co., 472 F.3d 506, 510-11 (7th Cir. 2006). Defendants, as the removing parties and proponents of federal jurisdiction, have the burden of proving by a preponderance of the evidence facts suggesting that the amount-in-controversy requirement is met. See Meridian Sec. Ins.

Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir. 2006). This demonstration concerns "what the plaintiff is claiming . . ., not whether plaintiff is likely to win or be awarded everything he seeks." Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005) (citations omitted). "It is well settled that while an individual plaintiff's multiple claims against a single defendant may be aggregated to determine diversity jurisdiction, the separate claims of multiple plaintiffs against a single defendant cannot be aggregated to meet the jurisdictional requirement." Clark v. State Farm Mut. Auto. Ins. Co., 473 F.3d 708, 711 (7th Cir. 2007). Moreover, "when there are two or more defendants, plaintiff may aggregate the amount against the defendants to satisfy the amount in controversy requirement only if the defendants are jointly liable; however, if the defendants are severally liable, plaintiff must satisfy the amount in controversy requirement against each individual defendant." LM Ins. Corp. v. Spaulding Enters., 533 F.3d 542, 548 (7th Cir. 2008). "Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." Brill, 427 F.3d at 448.

Plaintiffs allege in Count I that the Bank breached its contractual duties and the duty of good faith and fair dealing by notifying them that it will allow the policies to expire on October 31, 2010 and by underfunding Prost and Jones's policies so that if

either died prior to the policy's expiration, his beneficiary would not receive the entire $200,000 death benefit. In Count II, plaintiffs allege that the Bank is "estopped from implementation of its interpretation of" the Agreement. In Count III, plaintiffs allege that Lincoln breached its contract with plaintiffs--the insurance policy--and the duty of good faith and fair dealing by failing to issue annual reports to plaintiffs and failing to notify plaintiffs that the policy was not permanent and that absent modification, it would lapse after October 31, 2010. In each count, plaintiffs seek damages "in excess of $50,000" in addition to attorney's fees and costs.

In their motion to remand the case, plaintiffs contend that their contract claims with regard to the $200,000 death benefit will not "come to fruition" until November 1, 2010 and that at the time of removal, the amount in controversy was only $62,500, the amounts by which plaintiffs Prost and Jones allege that their policies were underfunded. In plaintiffs' view, the underfunding and death benefit "claims" are "bifurcated," and therefore the case must be remanded to state court.

We begin with the principle noted above, which defendants do not mention in their briefs, that plaintiffs may aggregate their claims against the two defendants to satisfy the amount-in-controversy requirement only if the defendants are jointly liable. The Bank and Lincoln are not alleged to be jointly liable, and

indeed, the nature of the claims against them is different. The Bank is alleged to have breached the Split Dollar Agreement by giving notice that it will let the life insurance policies lapse and by the alleged underfunding. Lincoln is alleged to have breached the policies themselves by failing to send annual reports and failing to give plaintiffs notice that the policies were not permanent. Because the defendants are not jointly liable, plaintiffs must satisfy the amount-in-controversy requirement against each individual defendant, and we will analyze the claims against the defendants separately, starting with the Bank.

The Bank argues that because plaintiffs bring this action in anticipation of the Bank allowing the policies to lapse as of October 31, 2010, and because each of the plaintiffs complains that he is entitled to $200,000 a permanent death benefit, that (at least) was the amount in controversy at the time of removal, regardless of the fact that the policy lapse or plaintiffs' passing had not yet occurred. In response to plaintiffs' contention that the amount in controversy at that time was only $62,500, the Bank points out that it is clear from the complaint that $62,500 would have been insufficient to satisfy each of the plaintiffs' claims in full on the day the suit was removed, and plaintiffs have in no way limited their respective claims to $75,000 or less.

We agree with the Bank that at least $200,000 was in controversy at the time of removal with respect to each of the

plaintiffs' claims against it. Plaintiffs claim that the Bank, by giving notice of its intent to allow the insurance policies to lapse, has repudiated its alleged obligation under the Split Dollar Agreement to continue providing a policy with a $200,000 death benefit. Although the condition precedent to the payment of the death benefit has not yet occurred, plaintiffs have put the entire value of the policy--$200,000--in controversy.

The Bank cites Meridian, 441 F.3d 536, a decision we find instructive despite some factual dissimilarity. In Meridian, a liability insurer sought a declaration that it had no duty to defend or indemnify an insured in a state-court class action. The district court had dismissed the complaint for want of jurisdiction, reasoning that a dispute about a duty to indemnify generally is not ripe until the insured has been called on to pay and that the stakes of that portion of the dispute were not ripe for federal adjudication and therefore did not count toward the amount in controversy. The Seventh Circuit vacated the judgment and instructed the district court to resolve the case on the merits, holding that the amount in controversy includes the full amount that the insurer could become obligated to pay. 441 F.3d at 539. The Court explained:

> [R]ipeness is peculiarly a question of timing rather than a limit on subject-matter jurisdiction. Although a plaintiff's asserted injury may depend on so many future events that a judicial opinion would be advice about remote contingencies—and this aspect of ripeness is part of the case-or-controversy requirement—these parties'

>    disagreement about potential indemnity is part of a larger controversy that is neither conjectural nor speculative. Meridian's potential obligation to indemnify the Rose Depot was in controversy from the moment this suit began . . . .

441 F.3d at 538-39 (citations omitted). Similarly, here the Bank has given notice of its intent to terminate the Split Dollar Agreement and allow the policy to lapse. Its potential obligation to continue providing a policy with a $200,000 death benefit is in controversy. We cannot say with legal certainty that judgment on each of plaintiffs' claims against the Bank will be less than the jurisdictional amount, so removal of the claims against the Bank was proper.

The amount in controversy with respect to Lincoln is another matter. In its brief, Lincoln characterizes plaintiffs' claim against it as the "alleged breach of its contractual duty to provide a life insurance policy with a permanent $200,000 death benefit for each Plaintiff." (Lincoln's Resp. at 1.) In fact, that is not the nature of plaintiffs' claim against Lincoln: the alleged breach is the failure to issue annual reports to plaintiffs or "otherwise" notify them that "the policy was not permanent, or that certain actions had to be taken in order to make the death benefit" permanent and the failure to notify them that "absent modification of the policy, the policy would lapse as of November 1, 2010." (Compl. Count III ¶¶ 45, 52.) Lincoln's entire brief, in which it argues that "there is no question that Plaintiffs are

asserting claims about the validity of the . . . policies . . ., bringing the $200,000 face amount of their claim for a permanent death benefit . . . into controversy," Lincoln's Resp. at 3, is based on its mischaracterization of plaintiffs' claims against it. To satisfy the amount-in-controversy requirement, Lincoln must come forward with competent proof that the jurisdictional threshold on the claims against it, not the claims against the Bank, has been reached. See, e.g., LM Ins. Corp., 533 F.3d at 552-53. It has failed to do so because it does not address how, or present facts indicating by a preponderance of the evidence that, plaintiffs' damages for the failure to issue annual reports or notify them of the nature of the policy would even come close to $75,000. Accordingly, Lincoln has not met its burden of showing that we have jurisdiction over the claims asserted against it, and we will remand those claims to the state court.

## **CONCLUSION**

Plaintiff's motion for remand is granted as to Count III, the claim against Lincoln Benefit Life Company, and denied as to Counts I and II, the claims against Bank of America Corporation. Count III, the breach of contract claim against Lincoln Benefit Life Company, is hereby remanded to the Circuit Court of Kane County.

The case is set for a status conference on July 7, 2010 at 10:30 a.m. to discuss a discovery schedule.

DATE:          June 25, 2010

ENTER:         _____
               John F. Grady, United States District Judge